UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-07950-SVW | Date | January 21, 2021 |
|---|---|---|---|
| Title | *Jorge Green v. Qatar Airways Company et al.* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**    FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT.

Jorge Green ("Plaintiff") filed the instant lawsuit against Qatar Airways Company ("Defendant"), alleging that Defendant is liable for Plaintiff's injuries resulting from an accident that occurred on Defendant's airplane. On December 9–10, 2020, this Court conducted a bench trial to resolve Plaintiff's claims.

This order contains the Court's Findings of Fact, Conclusions of Law, and Judgment.

### I.    Findings of Fact.

On September 2, 2017, Plaintiff was a passenger on Defendant's flight No. QR740 from Los Angeles, California to Doha, Qatar. Green Decl. at ¶ 1; Gangolli Decl. at ¶ 2. Plaintiff was seated in row 25, seat F. Wanjiru Decl. at ¶ 3. Flight QR740 was approximately 16.5 hours in duration and included two meal services, one snack service, and multiple beverage services. *Id.*

Approximately three hours before landing, the crew on flight QR740 began the second meal service. *Id.* at ¶ 7. Sheila Wanjiru—the flight attendant responsible for serving Plaintiff's section of the cabin—retrieved a service cart, began the second meal service around row 17, and gradually proceeded towards the back of the plane. *Id.* at ¶ 7–8. After serving any given row, Wanjiru would push the cart approximately 3 feet forward in order to serve the next row. *Id.* at ¶ 8.

After serving the passengers in row 23, Wanjiru began pushing the cart forward in order to serve the passengers in row 24. *Id.* at ¶ 10. By this point, Wanjiru had served most of the meal trays

: _____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-07950-SVW | Date | January 21, 2021 |
|---|---|---|---|
| Title | *Jorge Green v. Qatar Airways Company et al.* | | |

contained in the service cart. *See* Wanjiru Trial Testimony. As Wanjiru began pushing the cart forward from row 23, the front of the cart made contact with Plaintiff's right knee, which was positioned in the aisle. *Id.* at ¶ 11. Wanjiru stopped the cart and apologized, and Plaintiff responded that he was fine and felt no pain.[1] *Id.* at ¶ 12.

Approximately 30 minutes before the flight landed, however, Plaintiff informed Wanjiru that he was feeling pain in his right knee. *Id.* at ¶ 15. Wanjiru offered Plaintiff an ice pack, which Plaintiff accepted. *Id.* After the plane landed, Wanjiru's supervisor, Shepali Gangolli, urged Plaintiff to visit the airport clinic and offered Plaintiff assistance through the time of boarding his next flight. Gangolli Decl. at ¶ 8. As indicated from images reviewed by the Court at trial, Plaintiff's knee was slightly swollen and bruised following the incident.

Upon returning to the United States later in September 2017, Plaintiff began nine months of treatment with Dr. Sarkis Cholakyan, a chiropractor. Green Decl. at ¶ 5. That treatment ended in June 2018. *Id.* Following that treatment, Plaintiff visited an orthopedist who diagnosed Plaintiff with a meniscus tear. *Id.* at ¶ 6. A second orthopedist performed a platelet rich plasma injection on Plaintiff's right knee. *Id.* at ¶ 7; Nassos Decl. at ¶ 7. Plaintiff received additional treatment in October 2019 at a hospital in Ukraine.[2] *Id.* at ¶ 9. Finally, in September 2020, Plaintiff underwent a right knee arthroscopy and meniscectomy for his meniscus tear. *Id.* at ¶ 11; Ghodadra Decl. at ¶ 7.

The incident on flight QR740 did not cause Plaintiff's meniscus tear. On this point, the Court was persuaded by the testimony of Defendant's experts, Dr. Ronald Kvitne and Dr. Swathi Kode.

Dr. Kode, a biomechanical engineer, conducted an analysis to determine the amount of force created by an impact from a food cart like the one on flight QR740. Kode Decl. at ¶ 5. Dr. Kode conducted four tests in which she pushed food carts of varying weights from varying distances into a load cell that measured the amount of force from the impact of the cart. *Id.* at ¶¶ 7–10. The maximum

---

[1] Plaintiff alleges that when the cart hit his knee, he "woke up screaming from the impact of the food cart and immediately experienced excruciating pain and swelling to my right knee." Green Decl. at ¶ 1. Having observed Plaintiff's live testimony at trial, the Court does not find this statement credible.

[2] Plaintiff introduced no medical evidence at trial regarding the nature or details of this procedure.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-07950-SVW | Date | January 21, 2021 |
|---|---|---|---|
| Title | *Jorge Green v. Qatar Airways Company et al.* | | |

force measured—*i.e.*, the amount of force created by a full cart at a distance of 84 inches from the load cell—was 155.6 pounds.  *Id.* at ¶¶ 10–11.  Dr. Kode concluded to a reasonable degree of scientific certainty that this amount of force could not have caused Plaintiff's meniscus tear.  *Id.* at ¶ 14.  Dr. Kode's conclusion relied on research studies demonstrating that humans can tolerate frontal impact loads of approximately 800 to 1,000 pounds with only minor knee pain.  *Id.* at ¶ 15.

Similarly, Dr. Kvitne, a board-certified orthopedic surgeon, concluded to a reasonable degree of medical certainty that the incident on flight QR740 could not cause Plaintiff's meniscus tear.  Kvitne Decl. at ¶11.  Dr. Kvitne's conclusion was based on Plaintiff's medical records and an independent medical exam of Plaintiff.  *Id.* at ¶¶ 4–5.  Indeed, while examining Plaintiff, Dr. Kvitne found no objective signs of the symptoms Plaintiff complained of, including knee buckling, locking, clicking, cracking, and popping.  *Id.* at ¶ 13.  Dr. Kvitne also found no objective indications of pain aggravated by standing, walking, twisting, kneeling, and squatting.  *Id.*  Dr. Kvitne explained that if a patient suffered from those symptoms and limitations, he would expect significant atrophy when comparing the injured leg to the non-injured leg.  *Id.*  Dr. Kvitne, however, measured both of Plaintiff's legs and found "no atrophy of the thigh or calf musculature, in essence confirming that both legs are being used equally.  Both legs also tested as having normal strength, normal sensation, and normal reflexes."  *Id.*

Dr. Kvitne further concluded that the incident on flight QR740 would only result in a "soft tissue contusion with edema and inflammation along the outside aspect of [P]laintiff's knee.  This would have resolved over time with conservative management."  *Id.* at ¶ 14.  Such management would consist of 24 sessions of physiotherapy or chiropractic therapy at $150 per visit for a total of $3,600.[3]  *Id.* at ¶ 15.

The Court finds that the bruising and swelling that Plaintiff experienced are consistent with Dr. Kvitne's conclusion that the incident on flight QR740 would only have resulted in a "soft tissue contusion with edema and inflammation" of Plaintiff's knee.  Accordingly, the Court finds that the incident on flight QR740 caused the bruising and swelling of Plaintiff's knee but not a meniscus tear.

---

[3] Plaintiff asserts that his treatment with Dr. Cholakyan cost approximately $5,875.  Green Decl. at ¶ 5.  However, no billing records from Dr. Cholakyan's office were introduced at trial, *see* Dkt. 57, and Plaintiff offers no corroborating evidence for his approximation of the cost of Dr. Cholakyan's treatment.  Given that the Court found Plaintiff's testimony incredible throughout trial, the Court cannot accept Plaintiff's approximation of the cost of this treatment.

                                                                                            :
                                                                              _____
                                                                              Initials of Preparer
                                                                                   PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-07950-SVW | Date | January 21, 2021 |
| Title | *Jorge Green v. Qatar Airways Company et al.* | | |

**II.  Conclusions of Law.**

    Plaintiff's claim is governed by the Convention for the Unification of Certain Rules for International Carriage by Air (hereinafter "Montreal Convention").  Under the Montreal Convention, Defendant is liable for "damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking."  Montreal Convention, Art. 17.

    To state a claim under the Montreal Convention, Plaintiff must establish the following: (1) there was an accident during flight QR740; (2) the accident caused Plaintiff's alleged injuries; and (3) the accident occurred while Plaintiff was on board the aircraft or in the course of embarking or disembarking the aircraft.  *See Phifer v. Icelandair*, 652 F.3d 1222, 1224 (9th Cir. 2011).  The parties do not dispute the first and third elements.  Rather, the parties dispute the second element, *i.e.*, causation.

    As discussed above, the Court found that that the incident on flight QR740 did not cause Plaintiff's meniscus tear.  *See supra* at 2–3.  Accordingly, Plaintiff cannot state a claim for relief regarding his meniscus tear.

    However, the Court also found that the incident on flight QR740 caused the bruising and swelling of Plaintiff's knee.  *See supra* at 3.  Accordingly, Plaintiff has established entitlement to relief under the Montreal Convention for the injuries to his knee.

    As noted above, the Court is persuaded by Dr. Kvitne's testimony that the reasonable cost for treating Plaintiff's bruising and swelling is $3,600.  *See supra* at 3.  The Court is not persuaded by Plaintiff's approximation of the cost of his chiropractic treatment.  *See supra* at n.2.

    Accordingly, the Court finds that Plaintiff stated a claim for relief under the Montreal Convention for the bruising and swelling he suffered as a result of the incident on flight QR740.  Plaintiff is entitled to $3,600 in damages.

    :    

Initials of Preparer    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-07950-SVW | Date | January 21, 2021 |
|---|---|---|---|
| Title | *Jorge Green v. Qatar Airways Company et al.* | | |

### III.  Judgment.

IT IS ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor of Plaintiff Jorge Green in the amount of $3,600.

                                                                                     :

Initials of Preparer     PMC